IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Nicholas A. Massey,) | |
| ) | **MEMORANDUM IN SUPPORT OF** |
| Plaintiff,) | **MOTION FOR SUMMARY** |
| ) | **JUDGMENT OF DEFENDANTS** |
| vs.) | **JOSEPH T. MORF AND THE SOUTH** |
| ) | **CAROLINA DEPARTMENT OF** |
| David M. Stumbo, Demetrius G. Andrews,) | **PUBLIC SAFETY** |
| Joseph T. Morf, The Eighth Circuit Solicitor's) | |
| Office, and the South Carolina Department of) | C.A. No.: 6:21-CV-00396-DCC-JDA |
| Public Safety,) | |
| Defendants.) | |
| ) | |

**I.NATURE OF THE CASE**

On February 8, 2021, Plaintiff filed this action against the Solicitor's Office for the Eighth Circuit, Solicitor David M. Stumbo, Deputy Solicitor Demetrius G. Andrews, Captain Joseph T. Morf, and the South Carolina Department of Public Safety.[1] (ECF No. 1.) In his Amended Complaint, filed on March 17, 2021, Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 against for violation of his rights under the Fourteenth Amendment relating to Plaintiff's arrest for the murder of Christie Dawn Crocker. (ECF No. 14.)

**II.FACTUAL BACKGROUND**

On February 19, 2015, Plaintiff drove a car in which Christie Dawn Crocker was a front seat passenger and their eighteen-month-old son a passenger in the back seat. (ECF No. 14, ¶ 13.)

---

[1] On September 30, 2021, the United States Magistrate Judge recommended dismissal of the South Carolina Department of Public Safety given its immunity under the Eleventh Amendment. (ECF 46.) Plaintiff did not file any objections to that Report and Recommendation. It is pending before this Court. To the extent necessary, Defendant South Carolina Department of Public Safety also moves for summary on the same grounds as set forth in its motion to dismiss and as set forth herein with respect to Defendant Morf. (ECF 43; 43-1.)

As they were driving on Fairview Church Road, the car crossed the center line and struck a tree. (Id.) Crocker sustained fatal injuries as a result of the collision. (ECF No. 14, ¶ 15.)

At the time of the incident, Defendant Morf was employed by the South Carolina Department of Public Safety Highway Patrol Division (SCHP) as a Sergeant. (Attachment 1, Morf Aff. ¶ 1.) In that capacity, Defendant Morf supervised Troop 2, Post A, covering Newberry and Laurens Counties. (Id. ¶ 2.) Defendant Morf supervised day-to-day operations of the Post and provided supervision for the Troopers assigned to the Post, including Lance Corporal J.R. Davis. (Id. ¶ 2; Davis Aff. ¶ 1.)

Lance Corporal J.R. Davis responded to the collision involving Plaintiff and prepared a Traffic Collision Report in connection with his investigation of the accident. (Morf Aff. ¶ 3, Exh. A.) The SCHP Multi-Disciplinary Accident Investigation Team (MAIT) investigated the collision. (ECF No. 14, ¶ 19; Morf Aff. ¶ 4.)

Defendant Morf was not a member MAIT nor was Defendant Morf responsible for supervising the MAIT investigation. (Morf Aff. ¶ 4.) Defendant Morf did not participate in the investigation conducted by MAIT. (Id. ¶ 5.) Defendant Morf did not perform any of the interviews conducted by MAIT. (Id.) Captain Morf did not prepare, obtain or execute any of the search warrants issued in connection with the MAIT investigation. (Id.)

Members of MAIT communicated with Defendant Morf because he had supervisory responsibility for the Post to update him about the status of the investigation. (Id.) Defendant Morf provided copies of documents to the Office of the Eighth Circuit Solicitor when it made requests to Highway Patrol for information. (Id. ¶ 7.)

On April 16, 2015, Diane Roubaud, an employee of TitleMax in Mauldin, South Carolina, contacted the Post indicating that she had information relating to the death of Crocker. (Id. ¶ 6.)

On May 18, 2015, Defendant Morf met Roubaud at TitleMax to obtain a statement. (Id.) Roubaud provided Defendant Morf with a typed statement regarding a conversation that she had with Crocker on January 9, 2015. (Id. ¶6, Exh. B.) According to Roubaud, on January 9, 2015, Crocker told her that Plaintiff had threatened to kill Crocker by driving Crocker's car into a tree. (Id.) Defendant Morf provided Roubaud's statement to the Solicitor. (Id.)

On September 4, 2015, MAIT team member Lance Corporal K.K. Bratcher executed a search warrant for records from TitleMax relating to Crocker. (Attachment 2, Bratcher Aff. ¶ 3, Exh. A)  Captain Morf did not execute that warrant, obtain those records, nor review them. (Morf Aff. ¶ 7.)  Captain Morf did not make the decision that there was sufficient evidence to seek indictment of Plaintiff for the murder of Crocker. (Id. ¶ 10, 12.)

On January 26, 2016, the Solicitor appeared before the Laurens County Grand Jury and sought an indictment against Plaintiff for the murder of Crocker. (Id. ¶ 8.)  At the Solicitor's request, Defendant Morf appeared and presented the statement of Roubaud to the grand jury. (Id. ¶ 8.)  On January 26, 2016, the Laurens County Grand Jury returned a true bill of indictment against Plaintiff for the murder of Crocker.  (Attachment 3, McNeill Aff. Exh. A.)  Plaintiff was defended by a public defender. (ECF 14, ¶ 36.)

While Plaintiff was detained, it was determined that Crocker's death occurred in Greenville County rather than Laurens County, and that jurisdiction was properly in Greenville County. (ECF No. 14, ¶ 39.)   Despite this change, the Eighth Circuit Solicitor continued as the prosecutor for the case. (ECF 29, p. 6.) During the course of the criminal case, the Solicitor and Plaintiff's public defender exchanged discovery documents. (ECF 29-4.)

During the course of that criminal proceeding, Plaintiff's Public Defender also served a document subpoena upon TitleMax. (McNeill Aff., Exh. B.) On December 6, 2018, TitleMax

supplied the Public Defender's Office with records relating to Crocker's account. (McNeill Aff., Exh. C.)

On December 18, 2018, the Eighth Circuit Solicitor presented the case to the Greenville County Grand Jury. (Morf Aff. ¶ 10.) As Plaintiff acknowledges, Defendant Morf did not appear. (Id. ¶ 10.)[2] The Greenville County Grand Jury returned a second true bill of indictment against Plaintiff for the charge of murder. (McNeill Aff. Exh. D.)

On February 13, 2019, prior to the criminal trial, Judge Robin Stilwell conducted a pre-trial hearing to determine the admissibility of Roubaud's testimony given that Roubaud's testimony involved hearsay statements by Crocker. (Attachment 4, Transcript, Feb. 13, 2019)[3] Defendant Morf did not appear as a witness at this hearing. During the hearing, Roubaud was examined by both parties, and arguments were presented to the court about whether her testimony was admissible under Rule 804(b)(2), as a dying declaration. After hearing testimony from Roubaud, the Judge Stilwell found "Roubaud to be absolutely credible" and believed everything she said. (Id. p. 63, lines 7-9.) The court also stated, "[t]his is, of course, an unfortunate case because it was a tragic event and I understand that **the State had no choice but to prosecute this case** because if, in fact, this was a premeditated murder, then of course, the State has to pursue it. You really don't have a choice in prosecution." (Id. p. 61, lines 2-7.) Ultimately, the Court ruled that Roubaud's statement was inadmissible hearsay. (Id. p. 64, lines 4-7.)

---

[2] See ECF No. 29, p. 6. "Solicitor Stumbo and Deputy Solicitor Andrews caused [Plaintiff] to be indicted for the murder of Ms. Crocker in Greenville County (Indictment No. 2018-GC-23-09653A)."

[3] This Court may take judicial notice of the records in Plaintiff's state court criminal proceedings. See Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (Explaining that courts "may properly take judicial notice of matters of public record"); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

Given the court's decision regarding Roubaud's potential trial testimony, the Solicitor nolle prossed the Laurens County Grand Jury indictment on February 15, 2019. (McNeill Aff. Exh. E.) The indictment in Greenville County was nolle prossed by the Solicitor "with leave to re-indict should new evidence ever come to light in the future" on February 18, 2019. (Id.)

This motion is based upon the following grounds:

1. Defendant Morf is entitled to absolute immunity;

2. There is no evidence to support Plaintiff's claims;

3. There is no evidence of any violation of Plaintiff's constitutional rights;

4. There is no evidence to support Plaintiff's claim for malicious prosecution under 42 U.S.C. § 1983 and it is legally deficient;

5. There is no evidence to support Plaintiff's claim under the Fourteenth Amendment;

6. There is no evidence to support Plaintiff conspiracy claim under 42 U.S.C § 1983;

7. There is no evidence to support Plaintiff conspiracy claim under 42 U.S.C § 1985;

8. Defendant Morf is entitled to qualified immunity;

9. The Eleventh Amendment bars Plaintiff's claims against the South Carolina Department of Public Safety and this Court lacks subject matter jurisdiction accordingly; and

10. The evidence establishes that Defendants South Carolina Department of Public Safety and Joseph Morf are entitled to an order of this Court granting summary judgment in their favor as a matter of law.

### III.    ARGUMENT

**Defendant Morf Is Entitled to Absolute Immunity**

It is well-settled that grand jury witnesses have absolute immunity from a Section 1983 claim based upon the witnesses' testimony. <u>Burke v. Miller</u>, 580 F.2d 108, 109-10, n.3 (4th Cir.

1978); Lyles v. Sparks, 79 F.3d 372, 378 (4th Cir. 1996). This issue has been specifically addressed and claims, like those of Plaintiff here, rejected by the United States Supreme Court.

In Briscoe v. LaHue, 460 U.S. 325 (1983), the United States Supreme Court addressed whether Section 1983 creates a remedy against police officers for their testimony as witnesses. In that case, Briscoe filed a 1983 claim against Officer LaHue alleging that Officer LaHue violated his constitutional right to due process by giving perjured testimony in the criminal proceedings that led to Briscoe's conviction. Id. at 326. The Court observed that "when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.'" Id. at 329-30. The Court reasoned that a lack of absolute immunity for witnesses would impair the truth-seeking process at trial. Id. at 332-33. Specifically, the Court found that witnesses "might be reluctant to come forward to testify," or if a witness takes the stand, the witness's testimony "might be distorted by the fear of subsequent liability." Id. at 333. The Court found that "a police officer on the witness stand performs the same functions as any other witness." Id. at 342. The Court noted that subjecting police officers to damages liability under Section 1983 for their testimony "might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." Id. at 343. Accordingly, the Court found that police officer witnesses "are absolutely immune from civil liability based on their testimony in judicial proceedings." Id. at 328.

The Court subsequently extended its reasoning in Briscoe to testimony given in grand jury proceedings in Rehberg v. Paulk, 566 U.S. 356 (2012). In that case, the Court addressed whether government officials who initiate prosecutions by providing false testimony during grand jury proceedings are absolutely immune from a Section 1983 claim. There, Charles Rehberg, a certified public accountant, sent a series of anonymous faxes to management of the Phoebe Putney

Memorial hospital in Albany, Georgia, criticizing the hospital's management and activities. Id. at 359. As a "favor" to the hospital, former Georgia District Attorney Kenneth Hodges and Chief Investigator James Paulk began a criminal investigation of Rehberg for allegedly sending harassing e-mail messages and faxes to hospital administrators. Id. Investigator Paulk testified before three different grand juries, each of which separately indicted the plaintiff on various charges that were subsequently dismissed. Id. at 359-60. Rehberg filed a Section 1983 action against Hodges and Paulk alleging, among other things, that they conspired to present and did present false testimony to the grand jury. Id. at 360.

The Court held that a witness in a grand jury proceeding is entitled to the same absolute immunity from a Section 1983 action as a witness who testifies at trial. Id. at 375. The Court noted that under Briscoe, "a trial witness has absolute immunity with respect any claim based on the witness' testimony." Id. at 367. The Court reasoned that the same justifications for granting trial witnesses absolute immunity apply to grand jury witnesses because such witnesses may be chilled from providing needed testimony thereby depriving the tribunal of critical evidence. Id.

The Court addressed an argument that law enforcement witnesses require less protection from litigation because they are less likely to be intimidated by the threat of suit and because their testimony is potentially more damaging. Id. at 367-68. The Court rejected that argument and observed that "police officers testify in scores of cases every year," and "if police officer witnesses were routinely forced to defend against claims based on their testimony, their energy and attention would be diverted from the pressing duty of enforcing criminal law." Id. at 368-69. The Court also noted that a police officer witness' potential liability, if conditioned on the exoneration of the accused, could improperly influence decisions on appeal and for collateral relief. Id. at 369. Accordingly, the Court ruled that a grand jury witness, including a police officer, has absolute

immunity from any § 1983 claim based on the witness' testimony. Id. at 369. See also, Day v. Johns Hopkins Health Sys. Corp., 907 F.3d 766, 771-72 (4th Cir. 2018) (Holding that the absolute immunity afforded to witnesses "is a bedrock of our law today as it was centuries ago" and "extends not only to the testimony a witness actually provides, but also to the witness's action in preparing that testimony"); Young v. Posey, C.A. No. 6:16-2453-TMC, at *5 (Sept. 13, 2017) (Observing that witnesses are absolutely immune from suits for damages for testimony given in legal proceedings); Smith v. Swanson, C.A. No. 9:18-cv-251-RMG-MGB, at *7-8 (Feb. 15, 2018) *Report and Recommendation adopted by* C.A. No. 9:18-251-RMG (March 6, 2018) (Finding that a plaintiff's Section 1983 claims based upon allegations that a law enforcement officer gave perjured testimony during a judicial proceeding failed because the law enforcement officer was protected by absolute immunity).

Plaintiff asserts claims against Defendant Morf based upon his testimony before the Laurens County Grand Jury. (ECF 14, ¶¶ 27, 29, 31, 32, 33, 42, 43, 58, 59 & 60.) As the cases cited above make clear, Defendant Morf is entitled to absolute immunity from any such claims. Accordingly, Defendant Morf is entitled to an order granting summary judgment in his favor for any claim for Plaintiff's based on any testimony that he provided during the grand jury proceedings.

### There is No Evidence to Support Plaintiff's Claims

The gravamen of Plaintiff's Complaint is that the statement of Diane Roubaud obtained by Captain Morf was presented by the Solicitor to the Laurens County Grand Jury and later to the Greenville County Grand Jury. Plaintiff alleges that Defendant Morf violated his Fourth and Fourteenth Amendment rights by prosecuting Plaintiff for the murder of Crocker despite a lack of probable cause. (ECF No. 14, ¶¶ 23 & 75.) Plaintiff apparently alleges that his Constitutional rights were violated because there was unidentified exculpatory evidence that drew into question

the veracity of Roubaud's statement which should have been presented by the Solicitor to the Grand Juries. (ECF No. 14, ¶¶ 32 & 42.) Plaintiff alleges that his rights were violated because Defendants did not present the unidentified exculpatory evidence to the grand juries. (ECF No. 14, ¶¶ 33 & 43.)

### Prosecutors Make Decisions to Prosecute, Not the Police

Both case law and statutory law are clear, the duly elected Solicitor is charged with deciding whether there is sufficient evidence to present a case to a grand jury. For example, in Rehberg, the Court noted that "a detective or case agent who has performed or supervised most of the investigative work in a case may serve as an important witness in the grand jury proceeding and may very much want the grand jury to return an indictment. But such a witness…**does not make the decision to press criminal charges**." Rehberg, supra at 371. The Court stated that "in many jurisdictions, even if an indictment is handed up, a prosecution cannot proceed unless the prosecutor signs the indictment." Id. at 371-72.

In South Carolina, the prosecutor is responsible for making decisions as to whether, when, and against whom to initiate prosecution. "Both the South Carolina Constitution and South Carolina case law place the unfettered discretion to prosecute solely in the prosecutor's hands." State v. Thrift, 312 S.C. 282, 291-92, 440 S.E.2d 341, 346 (1994). See also Ex Parte Littlefield, 343 S.C. 212, 218, 540 S.E.2d 81 (2000) (Observing that the criminal justice system gives prosecutors "broad discretion in deciding which cases to try"); Cole v. White, C.A. No. 2:16-cv-3548-RMG-MGB, at *13 (D.S.C. Feb. 2, 2017) *adopted by* C.A. No. 2:16-cv-3548-RMG (D.S.C. Feb. 24, 2017) (Acknowledging that in South Carolina "only a prosecutor 'has discretion in choosing how to proceed with a case, including whether to prosecute in the first place'"); S.C. Code Ann. § 17-1-10 (2021) (A criminal action is prosecuted by the State, as a party, against a person charged with a public offense).

In this case in accordance with established law, the Solicitor, not Defendant Morf, decided to present the case to both grand juries. The Eighth Circuit Solicitor signed both indictments. (McNeill Aff. Exhibit A, p. 2; McNeill Aff. Exhibit D, p. 2.) Similarly, Judge Stilwell acknowledged that the Solicitor was responsible to make the choice to prosecute the charge against Plaintiff. Accordingly, Defendant Morf is entitled to an order granting summary judgment in his favor and against Plaintiff with respect to any claim that there was not probable cause or relating to the decision to present the case to the grand juries.

## Police Provide Evidence to Prosecutors

Plaintiff also appears to incorrectly claim that Captain Morf did not present some unidentified exculpatory evidence to the grand jury or withheld such evidence. Although he does not specifically identify same, presumably such claim relates to records that MAIT and his own defense counsel obtained from TitleMax. Plaintiff's claim against Defendant Morf is both legally and factually flawed.

Plaintiff must prove that: (1) the evidence was favorable to him; (2) Captain Morf suppressed the evidence in bad faith; and (3) prejudice ensued. Owens v. Baltimore City State's Attorney's Office, 767 F.3d 379, 396-97 (4th Cir. 2014). "Bad faith" means that the police officer "intentionally **withheld** the evidence for the purpose of depriving the plaintiff of the use of that evidence **during his criminal trial**." Jean v. Collins, 221 F.3d 656, 660 (4th Cir. 2000).

Here, there is no evidence that Defendant Morf obtained any exculpatory evidence that he withheld from the Solicitor, and which was not in the possession of his own defense counsel prior to trial. Captain Morf was not a member of MAIT and did not conduct the investigation of the underlying accident. He did not serve any search warrant, including the warrant served on TitleMax. He did not review the records obtained pursuant to that warrant. Thus, he could not have withheld evidence of which he was unaware.

Beyond this, even if Captain Morf had theoretically obtained, reviewed and suppressed any allegedly exculpatory information, Plaintiff's own criminal defense counsel obtained the TitleMax records by subpoena prior to the criminal trial, thus defeating Plaintiff's claims. A police officer generally "suppresses" evidence by not disclosing it to the prosecutor, but suppression does not occur when a criminal defendant is aware of the exculpatory information. Barnes v. Thompson, 58 F.3d 971, 975-77 (4th Cir. 1995). The Court of Appeals for the Fourth Circuit has held that a police officer who withholds exculpatory information does not violate the Fourteenth Amendment unless the officer's failure to disclose deprived the plaintiff of the right to a fair trial. Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). See also Windham v. Graham, 9:08-cv-1935, at *7-9 (D.S.C. Aug. 14, 2008) (Observing that a pretrial detainee who alleged that police officers withheld favorable evidence had no cause of action under the Fourteenth Amendment because he had not yet been tried).

The courts have held that prejudice ensues if "there is a reasonable probability" that the jury would have reached a different result had the evidence been properly disclosed. Id. at 397. In this case, Plaintiff cannot prove such element because there was no criminal trial in light of Judge Stilwell's evidentiary ruling. Accordingly, Defendant Morf is entitled to an order granting summary judgment in his favor as a matter of law.

### Prosecutors Do Not Have to Present Exculpatory Evidence to Grand Juries

The gravamen of Plaintiff's theory is that there was some unidentified exculpatory evidence that should have been presented to the grand juries. Plaintiff's legal theory is flawed because there is no such constitutional obligation. In United States v. Williams, 504 U.S. 36 (1992), the United States Supreme Court addressed whether a prosecutor was required to present exculpatory evidence to a grand jury. The Court noted no such obligation: "neither in this country

nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or have exculpatory evidence presented." Id. at 52. The Court reasoned that "[i]t is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." Id. at 51. See also, United States v. Gore, C.A. No.: 4:01-cr-627-RBH, at *3 (D.S.C. Sept. 20, 2007) (rejecting claims that the defendant's rights were violated when exculpatory evidence was withheld from the grand jury).

Plaintiff had no constitutional right to have exculpatory evidence presented to the grand jury. Furthermore, the Solicitor, not Defendant Morf, was responsible deciding what evidence was presented to the grand juries. Accordingly, Defendant Morf is entitled to an order granting summary judgment in his favor as a matter of law.

**Plaintiff's Claim for Malicious Prosecution under 42 U.S.C. § 1983 is Defective**

A claim for malicious prosecution under 42 U.S.C. § 1983 is a claim "founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). To prove a malicious prosecution claim under section 1983, Plaintiff must show that Defendant Morf seized Plaintiff pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in Plaintiff's favor. Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005).

First, Defendant Morf did not seize Plaintiff. He did not arrest Plaintiff nor make the decision to present the matter to either grand jury. Plaintiff cannot provide that Captain Morf ever seized him.

Second, a grand jury indictment is evidence of probable cause sufficient to defeat claims for malicious prosecution and false arrest under § 1983. See Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012) (An indictment, fair upon its face, returned by a properly constituted grand jury

conclusively determines the existence of probable cause); see also Provet v. South Carolina, No. 6:07-cv-1094-GRA-WMC, at *5 (D.S.C. June 25, 2007) ("A grand jury indictment is affirmative evidence of probable cause sufficient to defeat claims for malicious prosecution and false arrest under § 1983."). Plaintiff makes no contention that the two grand juries were not properly constituted.

For Plaintiff to satisfy the favorable termination element of his malicious prosecution claim, the criminal case against Plaintiff must have been disposed of in a way consistent with Plaintiff's innocence. Salley v. Myers, 971 F.3d 308, 313 (4th Cir. 2020). It is clear, that a nolle prosequi does not establish favorable termination. Id. (citing Nicholas v. Wal-Mart Stores, Inc., 33 F. App'x 61, 64-65 (4th Cir. 2002)). Plaintiff must establish that the "charges were nolle prossed for reasons which imply or are consistent with innocence." Id. Courts within the Fourth Circuit, including this Court, have held that an unexplained nolle prosequi, dismissal, or disposal of pending state charges does not satisfy the favorable termination requirement. Hewitt v. D.P. Garrison, C.A. No. 6:12-3403-TMC, at *2 (D.S.C. Dec. 17, 2013). In fact, this Court has specifically held that a charge that is nolle prossed with "leave to re-indict" does not imply nor is consistent with innocence of the accused. Jackson v. Gable, C.A. No. 0:05-2591-HFF-BM, at *6 (D.S.C. May 25, 2006) (Stating that indictments that were nolle prossed with leave to re-indict was not a "favorable disposition of these charges under South Carolina law"). See also Medows v. City of Cayce, C.A. No. 3:07-409-HFF, at *4 (D.S.C. June 24, 2008) (Holding that murder charges that were nolle prossed with leave to re-indict "is not a favorable disposition of the criminal proceedings under South Carolina law). The dismissal of charges by the Solicitor following the adverse evidentiary ruling of Judge Stilwell does not satisfy the requirements for a claim for malicious prosecution. In addition, with respect to the Greenville County indictment, the Solicitor

expressly nolle processed the charge with leave to reindict. (McNeill Aff. Exh. E)("The Greenville indictment is with leave to re-indict should new evidence ever come to light in the future.") Accordingly, there is no evidence to support a single element of Plaintiff's malicious prosecution claim and Defendant Morf is entitled to an order granting summary judgment in his favor as a matter of law.

### Plaintiff's Claim for False Arrest under 42 U.S.C. § 1983 is Deficient

To state a claim for false arrest under Section 1983, Plaintiff must establish: (1) that Defendant Morf arrested him; and (2) that the arrest was made without probable cause. Brooks v. City of Winston-Salem, 85 F.3d 178, 181-82 (4th Cir. 1996). Plaintiff must show that Defendant Morf was personally responsible for his arrest without probable cause. Magwood v. Streetman, C.A. No. 2:15-1600-RMG-BM at *16. (D.S.C. Aug. 15, 2016), *Report and Recommendation adopted by* C.A. No. 2:15-1600-RMG (D.S.C. Sept 21, 2016).

There is simply no evidence to support such a claim in this case. First, Defendant Morf did not arrest Plaintiff. Plaintiff was arrested based upon the indictment by the Laurens County Grand Jury, which determined that there was probable cause for such arrest, a determination also made by the Greenville County Grand Jury. The Solicitor, not Defendant Morf decided to present the case to both grand juries.

Beyond this, there is ample evidence that there was probable cause to believe that Plaintiff had committed the crime of murder. As Judge Stilwell recognized, having heard her testimony and the cross-examination by Plaintiff's own counsel, the information provided by Diane Roubaud supported the charge. Accordingly, Defendant Morf is entitled to an order granting summary judgment in his favor with respect to Plaintiff's claim for false arrest under the Fourth Amendment.

**There Is No Evidence to Support Plaintiff's Fourteenth Amendment Claim**

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994). To prevail under 42 U.S.C. § 1983, Plaintiff must prove: (1) a violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff does not allege any additional claims that support any claim under the fourteenth amendment and as discussed above, his claims are legally and factually deficient and Defendant Morf is entitled to summary judgment accordingly.

**There is no Evidence to Support Plaintiff's Conspiracy Claim Under 42 U.S.C. §1983**

Plaintiff falsely accuses Defendant Morf of conspiring with the Solicitor to charge him with murder. To prove his conspiracy claim under Section 1983, Plaintiff must prove that: (1) Defendants acted jointly in concert; (2) that some overt act was done in furtherance of the conspiracy; and (3) the conspiracy resulted in the deprivation of a constitutional right. Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996). To meet this "weighty" burden, Plaintiff must come forward with specific circumstantial evidence that Defendant Morf shared the same conspiratorial objective as his alleged co-conspirators. Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 658 (4th Cir. 2017). Plaintiff's evidence must, at least, reasonably lead to the inference that Defendants positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan – i.e., the indictment of Plaintiff for murder. Hinkle, at 421. The "naked assertion of a conspiracy . . . without supporting operative facts establishing an agreement between the defense attorney and the prosecutor or some other state actor, and a common plan to

put the agreement into effect, is insufficient to implicate § 1983." Young v. Posey, C.A. No. 6:16-2453-TMC, at *3 (D.S.C. Sept. 13, 2017).

Importantly, Defendant Morf is immune from suit for such claim. This Court has held that a prosecutor and police officer witness are entitled to absolute immunity from a claim of conspiracy to present false testimony. Green v. George, C.A. No. 4:08-3501-TLW, at *2 (D.S.C. Jan. 29, 2009). See also Barrett v. PAE Gov't Services, Inc., 975 F.3d 416, 435 (4th Cir. 2020) (Finding that meetings between officers and witnesses were consistent with the normal interaction between the police and citizenry when a complaint is investigated and did not plausibly suggest that they shared a common plan or "conspiratorial objective" to violate Plaintiff's civil rights).

Beyond this, there is no evidence that Captain Morf conspired with Eighth Circuit Solicitor's Office to commit an unlawful objective. Captain Morf obtained a written statement from Diane Roubaud after Roubaud contacted SCDPS. (Morf Aff. ¶ 6.) Captain Morf provided the Solicitor with a copy of the statement. (Id.) As the senior officer of the post, Captain Morf provided materials to the Solicitor's Office when it requested information from Highway Patrol. (Morf Aff. ¶ 7.) Defendant Morf did not decide whether to bring criminal charges against Plaintiff. (Morf Aff. ¶ 9.) Accordingly, Defendant Morf is entitled to an order granting summary judgment in his favor for Plaintiff's claims of conspiracy under Section 1983.

**There Is No Evidence to Support Plaintiff's Conspiracy Claim Under 42 U.S.C. § 1985**

Although he has alleged nothing about race in his Complaint, Plaintiff attempts to assert a claim under Section 1985. To state a claim under § 1985(3), Plaintiff must prove: (1) a conspiracy of two or more persons; (2) who are motivated by a specific class-based, invidiously discriminatory animus to; (3) deprive Plaintiff of the equal enjoyment of rights secured by the law to all; and (4) which results in injury to Plaintiff as; (5) a consequence of an overt act committed by Defendant

in connection with the conspiracy. Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). To prevail under 42 U.S.C. § 1985, Plaintiff must prove that Defendants acted based on a discriminatory motive. Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Historically, section 1985 was intended to encompass only those conspiracies motivated by animus against the kind of classes Congress was trying to protect when it enacted the Civil Rights Act. Stanfield v. Wigger, C.A. No. 2:14-cv-839-PMD, at *4 n.4 (D.S.C. Jan. 5, 2015) (Finding plaintiff failed to allege that the defendants were motivated by discrimination against him based on his race, color, or national origin).

There is no race-based allegation in Plaintiff's Complaint nor any evidence of any deprivation of Plaintiff's rights based upon race-based animus by Defendant Morf or any conspiracy to violate Plaintiff's rights because of race. Accordingly, Defendant Morf is entitled to an order granting summary judgment in his favor for Plaintiff's claims of conspiracy under Section 1985.

**Defendant Morf Is Entitled to Qualified Immunity**

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity also shields "officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). To overcome this shield, a plaintiff must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation. Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018). Judges of the district courts and the courts of appeals

are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). "For the purpose of determining whether a defendant is entitled to qualified immunity, the plaintiff's rights must be clearly established under the particular circumstances confronting the official at the time of the questioned action." Slattery v. Rizzo, 939 F.3d 213, 216 (4th Cir. 1991). When framing the specific rights allegedly violated "the proper focus is…upon the right…at the level of its application to the specific conduct being challenged. Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).

In Durham v. Horner, 690 F.3d 183 (4th Cir. 2012), the United States Court of Appeals for the Fourth Circuit granted summary judgment in favor of a law enforcement officer in a substantially similar case. In that case, Michael Dwayne Durham was indicted by a Virginia grand jury for three counts of selling drugs and was later arrested and jailed for several months. Id. at 185. The indictment of Durham resulted from the investigative work of David Horner, a police officer serving on a regional drug task force. Id. In performing his task force duties, Horner arranged for three controlled drug buys through a confidential informant. When the laboratory results confirmed that the confidential informant had purchased illegal drugs in each of the three incidents, Horner "told [the Task Force] to go ahead and indict [Durham]." Id. Horner had no involvement in Durham's arrest and prosecution. Id.

Another Agent testified before the grand jury, which returned three indictments against Durham charging him with felony drug distribution offenses. Id. Unbeknownst to Horner, the actual perpetrator of the crimes was Michael David Durham. Id. at 187. Months later, Durham's court appointed counsel obtained and presented Durham's cell phone records and argued that the wrong person had been indicted and arrested. Id. After the prosecutor realized the mistaken

identity and dropped the charges, Durham brought a civil suit against Horner under 42 U.S.C. § 1983 and that he had been maliciously prosecuted under state law. Id.

The district court found that "Horner acted in good faith in accord with the information available to him," and granted summary judgment for Horner on the basis of qualified immunity. Id. On appeal, Durham contended that Horner was not entitled to qualified immunity "because he relied on and utilized unverified information to set forth a chain of events that would lead to the indictment and arrest of the wrong individual." Id. at 188.

The United States Court of Appeals for the Fourth Circuit rejected that argument. The court ruled that Durham was unable to establish constitutional violation because "the prosecution was plainly supported by probable cause, as conclusively established by the three indictments." Id. at 188-89. The court stated that "an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." Id. at 189. The court noted that if it were to look behind the indictment in this case, it would agree with the district court that there was ample evidence for a reasonable law enforcement officer to believe the Durham was involved in the three drug transactions. Id. at 190. The court observed that Horner "was not required to exhaust every potential exculpatory lead or resolve every doubt about Durham's guilt before probable case was established." Id.

Here, Defendant Morf's involvement was similarly limited. He obtained the statement of Diane Roubaud after she contacted the Highway Patrol's office and he testified before the Laurens County Grand Jury to present that statement. A reasonable officer in such circumstance would likewise conclude that such actions did not violate Plaintiff's constitutional rights and Defendant Morf is entitled to qualified immunity accordingly.

## IV.  CONCLUSION

Based upon the foregoing authorities and arguments, Defendants Joseph T. Morf and the South Carolina Department of Public Safety respectfully submit that they are entitled to an order granting summary judgment in their favor as a matter of law.

<u>s/Stephanie H. Burton</u>
Stephanie H. Burton (#5009)
GIBBES BURTON, LLC
308 East Saint John Street
Spartanburg, SC 29302
sburton@gibbesburton.com
Telephone:  (864) 327-5000
Facsimile:   (864) 342-6884

*Attorneys for Defendant Joseph T. Morf and the South Carolina Department of Public Safety*

January 26, 2022