UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Nicholas A. Massey, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>David M. Stumbo, *in his individual and* )<br>*official capacities,* Demetrius G. Andrews, *in* )<br>*his individual capacity,* Joseph T. Morf, *in* )<br>*his individual capacity*, the Eighth Circuit )<br>Solicitor's Office, and the South Carolina )<br>Department of Public Safety, )<br>Defendants. )<br>)<br>_____ ) | C/A No: 6:21-cv-00396-DCC<br><br>**Memorandum in Opposition to Motion**<br>**for Summary Judgement of Defendants**<br>**Joseph T. Morf and the South Carolina**<br>**Department of Public Safety** |

Nicholas A. Massey responds to the Motion for Summary Judgement of Defendants Joseph T. Morf and the South Carolina Department of Public Safety (collectively "the Defendants"). ECF No. 49.

**I.     FACTUAL BACKGROUND.**

"On or about February 19, 2015, a vehicle driven by the Plaintiff was traveling on Fairview Church Road when it ran off the roadway and struck a tree." ECF No. 49-2, ¶ 3. "Christie Dawn Crocker, a passenger in the front seat of the vehicle, sustained fatal injuries as a result of the collision." Lance Corporal Davis "responded to the collision, prepared a Traffic Collision Report in connection to his investigation, and issued a citation to [Nicholas Massey] for traveling too fast for conditions." *Id*.; ECF No. 3. Nothing contained in this Traffic Collision Report indicates Mr. Massey intentionally drove off the road, into a tree, with the intent to injure or kill Ms. Crocker. The Traffic Collision Report, in fact, supports the incident being an accident. Affidavit of Chelsea B. McNeill ("McNeill Affidavit), ¶ 4; Affidavit of Jimmy Powers ("Powers Affidavit"), ¶ 4.

The Multi-Disciplinary Accident Investigation Team ("MAIT Team") of the South Carolina Highway Patrol investigated the accident. ECF No. 49-5, ¶ 2. Neither Captain Morf nor Corporal Bratcher claim the MAIT Team Report allege Mr. Massey intentionally drove off the road, into a tree, with the intent to injure or kill Ms. Crocker. ECF No. 49-2, 49-5. The MAIT Team Report, in fact, supports the incident being an accident. McNeill Affidavit, ¶ 5; Powers Affidavit, ¶ 5.

The Defendants rely on the Statement of Diane Roubaud, an employee of TitleMax, for probable cause to charge Nicholas Massey with murder. E.g., ECF No. 49-1, at 2-3, 8-9, 12-15; ECF No. 49-4. The Defendants, however, acknowledge obtaining a search warrant for the TitleMax file regarding a loan TitleMax made to Ms. Crocker prior to the dates of either of the indictments. ECF No. 49-1, at 3; 49-5, ¶ 3; 49-6. The prosecution did not disclose the TitleMax file in discovery in the criminal case, but Mr. Massey's defense team obtained it though a subpoena.[1] McNeill Affidavit, ¶ 7; Power's Affidavit, ¶ 7; ECF No. 9. The information in the TitleMax file demonstrates that Ms. Roubaud's statement is not true. McNeill Affidavit, ¶ 11; Power's Affidavit, ¶ 11.

In her statement, Ms. Roubaud claims she took the payment from Christie Dawn Crocker on January 9, 2015; however, the TitleMax Transaction Report, provided in response to the subpoena, states Jennifer Roberts accepted the payment from Ms. Crocker. McNeill Affidavit, ¶ 8, Ex. A; Power's Affidavit, ¶ 8, Ex. A.

The documents provided by TitleMax in response to the subpoena contain a Customer Notification Report where TitleMax documents contacts with customers. McNeill Affidavit, ¶ 9,

---

[1] Although the Defendants included copies of the search warrant and subpoena in their submissions, they did not include any of the records produced pursuant to the search warrant or subpoena. ECF No. 49-6, 49-9.

Ex. B; Power's Affidavit, ¶ 9, Ex. B. The Customer Notification Report does not contain an entry for January 9, 2015, indicating the interaction with Ms. Crocker was uneventful. It is not plausible that Ms. Crocker would state Nicholas Massey planned to kill her without a TitleMax employee documenting that information in the Customer Notification Report. *Id.*

Ms. Roubaud's entries in the Customer Notification Report contain a significant contradiction. McNeill Affidavit, ¶ 10, Ex. B; Power's Affidavit, ¶ 10, Ex. B. On March 30, 2015, Ms. Roubaud had a conversation with Mr. Crocker's father, Patrick Wrenn. Ms. Roubaud "[t]old him [she] actually saw Christie on that morning of the accident." *Id.* Ms. Roubaud did not include in her documentation anything about the conversation she claims occurred on January 9, 2015. Another entry by Ms. Roubaud on March 30, 2015 documents a telephone call with Mr. Crocker's sister-in-law, Ruby. Ms. Roubaud stated, "Customer had been here to make her payment; no one knows the cause of the accident." *Id.* Again, Ms. Roubaud did not include in her documentation anything about the conversation she claims occurred on January 9, 2015. *Id.* It is not plausible that a TitleMax employee claiming to have information about the alleged intentional cause of the accident would enter this information into the Customer Notification Report without also entering the information the employee claimed to know about the alleged intentional cause of the action. *Id.* Additionally, the Customer Notification Report documents that Ms. Crocker was not at the TitleMax on the morning of the accident. On February 19, 2015, Autumn Kay documents TitleMax "received $140 [money order] on mail [and] posted to acct." *Id.* The Transaction History Report further documents receipt of the money order on February 19, 2015. McNeill Affidavit, ¶ 10, Ex. A; Power's Affidavit, ¶ 10, Ex. A.

3

## II. STANDARD OF REVIEW.

Pursuant to Fed.R.Civ.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir.2002). The court, however, must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993)). Summary judgment is appropriate where a party fails to make a showing sufficient to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There must be sufficient evidence for a reasonable jury to find for the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and a "mere scintilla of proof ... will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir 2003).

A court may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Tolan v. Cotton*, 134 S.Ct. 1861 (2014) ("By failing to credit evidence that contradicted some of its key factual conclusions, the Court improperly 'weigh[ed] the evidence' and resolved disputed issues in favor of the moving party."). *See also Brosseau v. Haugen*, 543 U.S. 194, 195

4

n. 2 (2004) (per curiam) ("Because this case arises in the posture of a motion for summary judgment, we are required to view all facts and draw all reasonable inferences in favor of the nonmoving party.").

### III. ARGUMENT.

#### A. Probable Cause Did Not Exist to Charge Nicholas Massey with Murder.

"An officer has probable cause for arrest when, at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). "[T]the existence of probable cause is to be judged by the 'totality of the circumstances.'" *Id*. (citing *Illinois v. Gates,* 462 U.S. 213 (1983)).

Here, when viewing the evidence in a light most favorable to Mr. Massey, the totality of the circumstances demonstrate that probable cause did not exist to arrest and charge Mr. Massey with murder. The Traffic Collision Report, in fact, supports the incident being an accident. McNeill Affidavit, ¶ 4; Powers Affidavit, ¶ 4. The MAIT Team Report, in fact, supports the incident being an accident. McNeill Affidavit, ¶ 5; Powers Affidavit, ¶ 5. In fact, neither Captain Morf nor Corporal Bratcher claim the MAIT Team Report allege Mr. Massey intentionally drove off the road, into a tree, with the intent to injure or kill Ms. Crocker. ECF No. 49-2, 49-5. Neither the Traffic Collision Report nor the MAIT Team Report can be excluded from the totality of the circumstances; yet, excluding that information from the grand jury is exactly what happened when "[t]he Solicitor asked that [Defendant Morf] appear before the Laurens County Grand Jury to present the statement of Diane Roubaud." ECF No. 49-2, ¶ 9. Defendant Morf ***does not*** claim that

he presented the Traffic Collision Report, the MAIT Team Report, or the TitleMax information to the grand jury.

The Defendants argue, "Plaintiff apparently alleges that his Constitutional rights were violated because there was unidentified exculpatory evidence that drew into question the veracity of Roubaud's statement." ECF No. 49-1, at 8-9. The TitleMax records are not "unidentified" evidence. Rather, these records are evidence obtained during the investigation of this case, prior to obtaining any charges. ECF No. 49-6. The search warrant affidavit states, "The account records of Christie Dawn Crocker will assist in determining the timeline leading up to the time of death." *Id*., at 4. The TitleMax records do not merely "dr[a]w into question the veracity of Roubaud's statement." Rather, these records conclusively demonstrate that Ms. Roubaud's statement is not true. The TitleMax records cannot be excluded from the totality of the circumstances analysis.[2] The TitleMax records were critical to the probable cause determination.

The United States Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or "with reckless disregard for the truth" makes material false statements or omits material facts. *Franks v. Delaware*, 438 U.S. 154, 155 (1978). The Fourth Circuit and other circuits recognize the vitality of this principle. *See United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990); *Burke v. Town of Walpole*, 405 F.3d 66, 81–82 (1st Cir. 2005); *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir.2003); *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir.1985); *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir.1990) (upholding

---

[2] The Defendants argue, "As Judge Stilwell recognized, having heard [Ms. Roubaud's] testimony and the cross-examination by Plaintiff's own counsel, the information provided by Diane Roubaud supported the charge." ECF No. 49-1, at 14. Judge Stillwell, however, was not aware of the information contained in the TitleMax records. The Solicitor's Office was still concealing the information, and Mr. Massey's defense team made a strategic decision not to disclose it during that hearing. McNeill Affidavit, ¶ 13; Power's Affidavit, ¶ 13.

verdict for plaintiff where jury could have inferred that defendant police detective deliberately or recklessly excluded the exculpatory opinion of an important medical expert from the affidavit).

In the case of allegedly material omissions, "recklessness may be inferred where the omitted information was critical to the probable cause determination." *Golino v. New Haven*, 950 F.2d 864, 871 (2d Cir.1991); *see also Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir.2000) ("omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know" when deciding whether to issue a warrant).

In *Franks v. Delaware*, 438 U.S. 154 (1978) the Supreme Court held that a criminal defendant who establishes that a police officer procured a search warrant by intentionally or recklessly making materially false statements in a supporting affidavit is entitled to the suppression of evidence so long as "the remaining content [in the affidavit] is insufficient" to support probable cause. *Id*. at 156.  Appellate courts have consistently held that the *Franks* standard for suppression of evidence informs the scope of qualified immunity in a civil damages suit against officers who allegedly procure a warrant based on an untruthful application. *See, e.g.*, *Aponte Matos v. Toledo–Dávila*, 135 F.3d 182, 185 (1st Cir.1998) (where allegedly false statement was necessary to establish probable cause, defendant "will not be protected by qualified immunity" if plaintiffs prevail at trial on claim that defendant lied in search warrant application); *Olson v. Tyler*, 771 F.2d 277, 282 (7th Cir.1985) ("Where the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth, not only does the arrest violate the fourth amendment, but the officer will not be entitled to [qualified] immunity.").

7

Once this Court views these facts in a light most favorable to the plaintiff, Mr. Massey has established his arrest and prosecution for murder was not supported by probable casue.

### B. The Grand Jury Indictments are not Sufficient to Shield the Defendants from Liability.

A grand jury indictment is not dispositive on the issue of probable casue. *Bennett v. R&L Carriers Shared Services*, LLC, 744 F.Supp.2d 494, 520 (2010) ("[T]he jury reasonably found a want of probable cause, even though the police, the magistrate, the grand jury, and the prosecutor all believed that probable cause existed to prosecute Bennett for embezzlement based on the information known to them."). Under South Carolina state law, the prima facie finding of probable cause upon an indictment is rebuttable. *White v. Coleman*, 277 F.Supp. 292 (1967). For the reasons set forth in Subsection A above, Mr. Massey has rebutted the prima facia finding of probable casue.

### C. Defendant Morf is Personally Responsible for Nicholas Massey's Arrest for Murder, and The Claim for False Arrest under 42 U.S.C. § 1983 is not Defective.

The Defendants claim Captain Morf was not personally responsible for the arrest of Nicholas Massey. *E.g.* ECF No. 49-1, at 14. This Court must reject this claim. As seen, prior to testifying before the Laurens County Grand Jury, "[t]he Solicitor asked that [Defendant Morf] appear before the Laurens County Grand Jury to present the statement of Diane Roubaud." ECF No. 49-2, ¶ 9. Defendant Morf ***does not*** claim that the Solicitor asked him to present the Traffic Collision Report, the MAIT Team Report, or the TitleMax information to the grand jury—all of which are critical to the probable cause determination. Defendant Morf does not claim that he presented the Traffic Collision Report, the MAIT Team Report, or the TitleMax information to the grand jury. Thus, Defendant Morf was personally responsible for the arrest and prosecution of Nicholas Massey for Murder.

The Defendants also contend "there is ample evidence that there was probable casue to Plaintiff had committed murder." ECF No. 49-1, at 14. For the reasons set forth in Subsections A and B, probable cause did not exist to arrest and prosecute Nicholas Massey for murder.

**D. Malicious Prosecution.**

The Defendants argue claims for malicious prosecution under South Carolina common law and 42 U.S.C. § 1983 are defective. ECF No. 49-1, at 12-14. The Defendants acknowledge, "To prove a malicious prosecution claim under section 1983, Plaintiff must show that Defendant Morf seized Plaintiff pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in Plaintiff's favor." *Id.*, at 12 (citing *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005). Under South Carolina common law, "To maintain an action for malicious prosecution, plaintiff must show (1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of, the defendant; (3) termination of such proceeding in plaintiff's favor; (4) malice in instituting such proceedings; (5) want of probable cause, and (6) resulting injury or damage." *Parrott v. Plowden Motor Co.*, 246 S.C. 318, 321, 143 S.E.2d 607, 608 (1965).

For the reasons set forth in Subsections A and B, probable cause did not exist to arrest and prosecute Nicholas Massey for murder.

The Defendants also argue Mr. Massey has not established the element of favorable termination of the prosecution. ECF No. 49-1, at 13-14. It is beyond dispute that the charges were dismissed. McNeill Affidavit ¶ 14, Ex. C and D; Powers Affidavit ¶ 14, Ex. C and D. As seen the TitleMax records conclusively demonstrate the Statement of Diane Roubaud is not true. The Defendants, accordingly, do not have any evidence at all that Nicholas Massey committed murder. Mr. Massey, therefore, satisfies the element of favorable termination.

9

**E. Conspiracy.**

"To establish a civil conspiracy under § 1983, [a plaintiff] must present evidence that the Appellees acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right. *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown,* 983 F.2d 570, 577 (4th Cir.1992). Here, viewing the evidence in the light most favorable to Nicholas Massey, the Solicitor's Office asked Defendant Morf to present to the grand jury only the Statement of Diane Roubaud, Defendant Morf agreed to present to the grand jury only the Statement of Diane Roubaud. Defendant Morf *does not* claim that the Solicitor asked him to present the Traffic Collision Report, the MAIT Team Report, or the TitleMax information to the grand jury—all of which are critical to the probable cause determination. Defendant Morf does not claim that he presented the Traffic Collision Report, the MAIT Team Report, or the TitleMax information to the grand jury.

As seen, the TitleMax records conclusively demonstrate that the Statement of Diane Roubaud is not true. When Defendant Morf and the Solicitor's Office agreed the submit untrue evidence to the grand jury, while withholding the Traffic Collision Report, the MAIT Team Report, or the TitleMax information to the grand jury (all of which are critical to the probable cause determination), they committed an overt act that resulted in the deprivation of Mr. Massey's liberty in the absence of probable cause.

**F. Defendant Morf is not Entitled to Qualified Immunity.**

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The steps in determining

whether officials are entitled to qualified immunity are: (1) an inquiry into whether the plaintiff has alleged a deprivation of a constitutional right and (2) whether that right was clearly established at the time of the alleged violation. *Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir.2001).

For a right to be clearly established, its contours "must be sufficiently clear [such] that a reasonable official would [have] underst[ood] that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held [to be] unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002). Rather, liability obtains if the state of the law is such that it would have been "apparent" to an officer that his conduct violated constitutional law. *Anderson*, 483 U.S. at 640.

In *Franks v. Delaware*, 438 U.S. 154 (1978) the Supreme Court held that a criminal defendant who establishes that a police officer procured a search warrant by intentionally or recklessly making materially false statements in a supporting affidavit is entitled to the suppression of evidence so long as "the remaining content [in the affidavit] is insufficient" to support probable cause. *Id*. at 156. Appellate courts have consistently held that the *Franks* standard for suppression of evidence informs the scope of qualified immunity in a civil damages suit against officers who allegedly procure a warrant based on an untruthful application. *See, e.g.*, *Aponte Matos v. Toledo–Dávila*, 135 F.3d 182, 185 (1st Cir.1998) (where allegedly false statement was necessary to establish probable cause, defendant "will not be protected by qualified immunity" if plaintiffs prevail at trial on claim that defendant lied in search warrant application); *Olson v. Tyler*, 771 F.2d 277, 282 (7th Cir.1985) ("Where the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly

11

disregarded the truth, not only does the arrest violate the fourth amendment, but the officer will not be entitled to [qualified] immunity.").

As seen, Nicholas Massey has shown that he was charged with murder in the absence of probable cause, that the charge resulted for omitting information that was critical to the probable cause determination, and the rights were well established at the time—to be free from unreasonable seizures based on false testimony or the omission of information that was critical to the probable determination.

### G. Defendant Morf's Affidavit Supports Nicholas Massey's Claims against Solicitor Stumbo, Deputy Solicitor Andrews, and the Eighth Circuit Solicitor's Office.

Nicholas Massey also sues Solicitor Stumbo, Deputy Solicitor Andrews, and the Eighth Circuit Solicitor's Office for their roles in causing his arrest and prosecution for murder. The Magistrate Judge recommended demising these defendants (ECF No. 32), but this Court has not ruled on Mr. Massey's objections (ECF No. 35). Although prosecutors have absolute immunity for their actions "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), they are not entitled to absolute immunity for providing legal advice to the police on the use of investigative techniques "and the existence of probable cause to arrest," *Burns v. Reed*, 500 U.S. 478, 487 (1991), or "when conducting investigative work themselves in order to decide whether a suspect may be arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 275 (1993). South Carolina follows this same rule, and the South Carolina Torts Claim Act allows for lawsuits against the Solicitor's Office for actions taken by its agents and employees in their investigative capacity. *Williams v. Condon*, 347 S.C. 227, 553 S.E.2d 496 (Ct. App. 2001).

Defendant Morf's affidavit supports Nicholas Massey's claims against Solicitor Stumbo, Deputy Solicitor Andrews, and the Eighth Circuit Solicitor's Office. He states:

> When the Office of the Eighth Circuit Solicitor needed information from SCHP relating to this accident, they often made those requests to me in my supervisory role. I directed the request to the appropriate person within SCHP to gather the information requested and then I provided requested materials to the Solicitor's Office. I believe that the Solicitor also periodically made requests for information directly to members of MAIT.

ECF No. 49-2, ¶ 8. He also states:

> On or about January 26, 2016, Solicitor David Stumbo convened the Laurens County Grand Jury seeking an indictment against Plaintiff for the murder of Christie Crocker. The Solicitor asked that I appear before the grand jury to present the statement of Diane Roubaud.

*Id*., at ¶ 9. He futher contends he did not make the decision that there was sufficient evidence to seek indictment of Plaintiff for the murder of Crocker. Id., at ¶¶ 10, 12. These statements establish that defendants Solicitor Stumbo, Deputy Solicitor Andrews, and the Eighth Circuit Solicitor's Office were acting in their investigative capacity.

Additionally, throughout his Memorandum in Support of his Motion for Summary Judgment, Defendant Morf blames the Solicitor's Office for the decisions to convene the grand juries, present only the Statement of Diane Roubaud is not true, withhold the Traffic Collision Report, the MAIT Team Report, or the TitleMax information to the grand jury (all of which are critical to the probable cause determination), and cause the arrest and prosecution of Nicholas Massey. *E.g.*, ECF No. 49-1, at 3 ("Captain Morf did not make the decision that there was sufficient evidence to seek indictment of Plaintiff for the murder of Crocker." And, "On January 26, 2016, the Solicitor appeared before the Laurens County Grand Jury and sought an indictment against Plaintiff for the murder of Crocker."); 4 ("On December 18, 2018, the Eighth Circuit Solicitor presented the case to the Greenville County Grand Jury."); and 9-10 ("Prosecutors Make Decisions to Prosecute, Not the Police"); 10-11 ("Police Provide Evidence to Prosecutors"); 12 (Defendant Morf did not "make the decision to present the matter to either grand jury.").

## IV. CONCLUSION.

For the foregoing reasons, this Court should deny the Defendants motion for summary judgment and allow this lawsuit to proceed to trial.

Respectfully Submitted,

By: <u>s/E. Charles Grose, Jr.</u>

E. Charles Grose, Jr.
The Grose Law Firm, LLC
400 Main Street
Greenwood, South Carolina 29646
(864) 538-4466
charels@groselawfirm.com
Federal Court ID: 6072

***Attorneys for Plaintiff Nicholas A. Massey***

March 2, 2022
Greenwood, South Carolina