IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Nicholas A. Massey, | Case No. 6:21-cv-00396-DCC-JDA |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Joseph T. Morf *in his individual capacity,* | |
| Defendant.[1] | |

This matter is before the Court on a motion for summary judgment filed by Defendant.[2] [Doc. 49.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), this magistrate judge is authorized to review all pretrial matters in this case.

Plaintiff brought this action on February 8, 2021, pursuant to 42 U.S.C. § 1983. [Doc. 1.] On January 26, 2022, Defendant filed a motion for summary judgment. [Doc. 49.] On March 2, 2022, Plaintiff filed a response opposing the motion. [Doc. 57.] On March 8, 2022, Defendant filed a reply. [Doc. 58.] The motion is now ripe for review.

## **BACKGROUND**

Viewed in the light most favorable to Plaintiff, the record reveals the following facts. On February 19, 2015, Plaintiff was driving a car with Christie Dawn Crocker ("Crocker") as a passenger in the front seat and their 18-month-old son as a passenger in the back

---

[1]This caption reflects the parties currently involved in this case.

[2]At the time the motion was filed, the South Carolina Department of Public Safety was also a Defendant and joined in the motion. However, the South Carolina Department of Public Safety and other Defendants have since been dismissed from this action, leaving only a single Defendant. [Doc. 60; *see* Doc. 46.]

seat.  [Doc. 57-1 ¶ 4.]  Plaintiff crossed the center line, traveled off the roadway and struck a tree, and Crocker died in the accident ("the accident").  [*Id.*]

At the time of the accident, Defendant was employed as a sergeant by the South Carolina Department of Public Safety Highway Patrol Division ("SCHP").  [Doc. 49-2 ¶ 2.]  In this capacity, he had supervisory responsibility over Post A of Troop Two ("the Post"), providing service in Newberry and Laurens Counties.  [*Id.*]  He was responsible for day-to-day operations of the Post and provided oversight for the Troopers assigned to the Post, including Lance Corporal J.R. Davis.  [*Id.* ¶¶ 2–3.]  Lance Corporal Davis responded to the accident and prepared a Traffic Collision Report in connection with his investigation.  [*Id.* ¶ 3; Doc. 49-3.]  The SCHP Multi-Disciplinary Accident Investigation Team ("MAIT") investigated the accident.  [Doc. 49-2 ¶ 5; *see* Doc. 57-1 ¶ 5.]  Defendant was not a member of the MAIT, nor did he participate in the MAIT's investigation or prepare, obtain, or execute any of the search warrants issued in connection with the MAIT's investigation.  [Doc. 49-2 ¶¶ 4–5.]  However, because Defendant had supervisory responsibility for the Post, MAIT members occasionally communicated with him to update him about the investigation's status.  [*Id.* ¶ 5.]  He also provided copies of documents to the Office of the Eighth Circuit Solicitor ("the Solicitor") when it made requests for information.  [*Id.* ¶ 8.]

Diane Roubaud contacted the Post indicating that she had information concerning Crocker's death.  [*Id.* ¶ 6.]  On May 18, 2015, Defendant met with Roubaud at TitleMax to obtain a statement.  [*Id.*]  Roubaud gave Defendant a typed statement concerning a conversation that she had had with Crocker on January 9, 2015.  [*Id.*; Doc. 49-4.]  According to Roubaud, Crocker told her that Plaintiff had threatened to kill Crocker by

2

driving her car into a tree. [Doc. 49-4 at 3.] Defendant provided Roubaud's statement to the Solicitor. [Doc. 49-2 ¶ 6.]

On September 4, 2015, MAIT team member Lance Corporal Kristopher K. Bratcher executed a search warrant for records from TitleMax relating to Crocker. [Docs. 49-5 ¶ 3; 49-6.] Defendant did not execute that warrant or obtain or review the records received through execution of the warrant. [Doc. 49-2 ¶ 7.]

On January 26, 2016, the Solicitor appeared before the Laurens County Grand Jury seeking an indictment against Plaintiff for the murder of Crocker. [*Id.* ¶ 9.] At the Solicitor's request, Defendant appeared and presented Roubaud's statement to the grand jury. [*Id.*] The same day, the Laurens County Grand Jury returned a true bill of indictment against Plaintiff for Crocker's murder.[3] [*Id.*; Doc. 49-8.]

Plaintiff was defended by an attorney in the Eighth Circuit Public Defender's Office. [Doc. 57-1 ¶¶ 2–3.] Discovery was requested under Rule 5 of the South Carolina Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963). [*Id.* ¶ 3.] During the course of the criminal proceeding, Plaintiff's attorney also served a subpoena for

---

[3]The Indictment alleged

> That Nicholas Antoine Massey did, on or about February 19, 2015, in Laurens County, willfully, feloniously, and with malice aforethought kill one Christie Dawn Crocker by intentionally driving the vehicle in which she was a passenger into a large tree, thereby demonstrating a wanton or extreme reckless disregard for human life; and that the said Christie Dawn Crocker did die in Laurens County as a proximate result thereof on or about February 19, 2015, in violation of Section 16-3-10 of the South Carolina Code of Laws, 1976, as amended.

[Doc. 49-8 at 3.]

3

documents on TitleMax. [Docs. 49-9; 57-1 ¶ 7.] On December 6, 2018, TitleMax provided records relating to Crocker's account to the Public Defender's Office. [Docs. 49-10; 57-3.]

While Plaintiff was incarcerated on the murder charge, it was determined that Crocker's death actually occurred in Greenville County rather than Laurens County. [Doc. 57-1 ¶ 14.] On December 18, 2018, the Solicitor presented the case to the Greenville County Grand Jury. [Doc. 49-2 ¶ 11.] Defendant did not appear. [*Id.*] The Greenville County Grand Jury subsequently returned a second true bill of indictment against Plaintiff for the charge of murder. [Doc. 49-11.]

On February 13, 2019, prior to the criminal trial, Circuit Court Judge Robin Stilwell conducted a pretrial hearing concerning whether Roubaud's testimony was inadmissible on the basis that it concerned hearsay statements by Crocker. [Doc. 49-13.] During the hearing, both parties examined Roubaud and presented arguments concerning whether her testimony was admissible under Rule 804(b)(2) of the South Carolina Rules of Evidence as a dying declaration.[4] [*Id.* at 8–61.] At the conclusion of these proceedings, Judge Stilwell ruled that Roubaud's statement was inadmissible hearsay. [*Id.* at 62–65.]

Given Judge Stilwell's decision regarding Roubaud's potential trial testimony, the Solicitor nolle prossed both the Laurens County and Greenville County Grand Jury indictments on February 15, 2019, and February 18, 2019, respectively, with leave to refile the Greenville case if additional evidence was uncovered. [Docs. 49-12; 57-5; 57-6.]

---

[4]That rule provides that "[i]n a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death," is "not excluded by the hearsay rule if the declarant is unavailable as a witness." Rule 804(b)(2), SCRE.

4

Plaintiff's Amended Complaint alleges two causes of action against Defendant in his individual capacity: a 42 U.S.C. § 1983 claim for Fourteenth Amendment substantive and procedural due process violations based on his alleged wrongful charge, arrest, and imprisonment [Doc. 14 ¶¶ 48–55]; and a claim under 42 U.S.C. §§ 1983 and 1985 for conspiracy to violate Plaintiff's Fourteenth Amendment rights to due process [*id.* ¶¶ 56–62]. As his relief, Plaintiff seeks compensatory and punitive damages and court costs. [*Id.* at 18–19.]

## APPLICABLE LAW

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

5

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly

be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Claim Based on Plaintiff's Arrest or Indictment**

Defendant argues he is entitled to summary judgment on Plaintiff's claim based on Plaintiff's arrest, prosecution, or imprisonment. [Docs. 49-1 at 6–14; 58.] The Court agrees with Defendant.

Section 1983 actions premised on malicious prosecution or false arrest are analyzed as actions claiming unreasonable seizures in violation of the Fourth Amendment. *See, e.g.*, *Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002) (recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) (stating claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"); *Curtis v. Devlin*, No. 1:04-cv-409, 2005 WL 940571, at *6 (E.D. Va. Apr. 19, 2005) (explaining that § 1983 actions for false arrest and malicious prosecution should be analyzed under the Fourth Amendment). The same is true of such claims complaining of due process or Sixth Amendment violations. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 184 (4th Cir. 1996) ("[T]he Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial.").

To prove a claim for false arrest, a plaintiff must demonstrate that he was arrested without probable cause. *Sowers v. City of Charlotte*, 659 F. App'x 738, 740 (4th Cir. 2016). And "a § 1983 claim for damages due to false imprisonment is akin to a malicious prosecution claim." *McCormick v. Wright*, No. 2:10-cv-00033-RBH, 2010 WL 565303, at *3 (D.S.C. Feb. 17, 2010); *see also Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) ("What is conventionally referred to as a '§ 1983 malicious prosecution' action is nothing more than a § 1983 claim arising from a Fourth Amendment violation."). "To [prove] such a claim, a plaintiff must [show] that the defendant (1) caused (2) a seizure of the plaintiff

9

pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor."  *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). Plaintiff has not forecasted evidence sufficient to create a genuine dispute of material fact as to any of these elements.  The Court will address them seriatim.

### *Causation*

Although Plaintiff argues that Defendant was personally responsible for his arrest [Doc. 57 at 8], he has failed to forecast evidence that Defendant arrested him or caused him to be arrested.  Plaintiff argues that Defendant caused him to be indicted by excluding exculpatory evidence that would have drawn into question the truth of Roubaud's statement.  [*Id.* at 5–8.]  Defendant contends, however, that he was not responsible for deciding what was presented to the grand jury and only presented the statement from Roubaud at the Solicitor's request.  [Docs. 49-1 at 12; 58 at 3–4.]  Defendant also argues that criminal suspects do not have a constitutional right to have exculpatory evidence presented during a grand jury proceeding in any event.  [Docs. 49-1 at 11–12; 58 at 4.] Upon review, the Court agrees with Defendant's arguments.

Defendant's role in bringing about Plaintiff's indictment consisted of his obtaining Roubaud's statement, providing it to the Solicitor, and then presenting the statement to the Laurens County Grand Jury at the Solicitor's request.  [Doc. 49-2 ¶¶ 6, 9.]  Plaintiff relies on *Franks v. Delaware*, 438 U.S. 154 (1978), as support for his argument that Defendant violated his constitutional rights by not presenting evidence to the Laurens County grand jury that contradicted Roubaud's statement.  [Doc. 57 at 6–7.]  This reliance is misplaced, however.  The Supreme Court held in *Franks* that the Fourth Amendment may be violated

when "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant *in [a] warrant affidavit*, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155–56 (emphasis added). In contrast, the Fourth Circuit has made clear that the causal role prosecutors play in seeking indictments justifies different rules for claims for wrongfully obtained indictments. *Evans*, 703 F.3d at 647–48. Accordingly, the Fourth Circuit has held that "a police officer is not liable for a plaintiff's unlawful seizure following indictment in the absence of evidence that [the officer] misled or pressured the prosecution." *Id.* at 648 (alterations in original) (internal quotation marks omitted). In this case, Plaintiff has not forecasted evidence that Defendant misled or pressured the prosecution, and thus Defendant cannot be liable under Plaintiff's theory that Defendant caused him to be wrongfully indicted.[5] In any event, a criminal suspect does not have a constitutional right to have exculpatory evidence during a grand jury proceeding. *See United States v. Williams*, 504 U.S. 36, 45–46 (1992); *United States v. Gore*, No. 4:01-627-CWH, 2007 WL 2749750, at *2 (D.S.C. Sept. 20, 2007) (rejecting claims that the defendant's rights were violated when exculpatory evidence was withheld from the grand jury), *aff'd*, 298 F. App'x 226 (4th Cir. 2008).

---

[5]In any event, as Defendant also argues [Docs. 49-1 at 5–8; 58 at 1–2], the law is clear that, as a witness before the grand jury, Defendant is protected by absolute immunity. *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) ("[W]itnesses, including police officers, who testify in judicial proceedings[,] . . . are integral parts of the judicial process and, accordingly, are shielded by absolute immunity." (internal quotation marks omitted)); *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983) (holding police witnesses absolutely immune from liability for damages under § 1983 based on their testimony in a prior proceeding); *Burke v. Miller*, 580 F.2d 108, 109 (4th Cir. 1978) (noting that a witness who takes the stand at instance of the prosecution is absolutely immune from liability for § 1983 damages).

For both of these reasons, Plaintiff cannot show that Defendant caused him to be seized.

### *A Seizure Unsupported by Probable Cause*

Even if Plaintiff could prove Defendant caused him to be seized, he would not be able to show that the seizure was unsupported by probable cause. Under § 1983, "an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (internal quotation marks omitted); *see also Provet v. South Carolina*, No. 6:07-1094-GRA-WMC, 2007 WL 1847849, at *5 (D.S.C. June 25, 2007) (finding that § 1983 claims of false arrest and malicious prosecution were precluded because of the issuance of an indictment). Here, Plaintiff's indictments thus prevent Plaintiff from establishing the unsupported-by-probable-cause element.[6]

### *The Termination of Criminal Proceedings in Plaintiff's Favor*

For the favorable termination element to be satisfied, the criminal proceedings of which the plaintiff complains must have been "terminated 'for reasons indicative of the innocence' of the criminal defendant (the civil plaintiff)." *Ellison v. Proffit*, No. 4:16-cv-00847-BHH-KDW, 2017 WL 598511, at *3 (D.S.C. Jan. 24, 2017). Here, Plaintiff has not forecasted evidence to create a genuine dispute of material fact concerning whether the charges against him were terminated for reasons indicating his innocence. Rather, the

---

[6]Plaintiff contends that the fact that he was indicted is not dispositive of the probable cause issue in this context. [Doc. 57 at 8.] However, the Court has already explained that "a police officer is not liable for a plaintiff's unlawful seizure following indictment in the absence of evidence that [the officer] misled or pressured the prosecution." *Evans*, 703 F.3d at 648 (alterations in original) (internal quotation marks omitted).

record suggests that the charges were dismissed because key evidence was ruled to be inadmissible. [Doc. 49-12.]

In sum, Plaintiff has failed to forecast evidence that would create a genuine dispute of material fact as to any of the elements of his § 1983 claim based on his arrest, prosecution, or imprisonment, including the alleged withholding of exculpatory evidence. Accordingly, the Court recommends that Defendant's motion for summary judgment be granted as to this claim.

**Claim for Conspiracy under Sections 1983 or 1985**

Defendant also argues that he is entitled to summary judgment on the claim of conspiracy brought under sections 1983 and 1985. [Docs. 49-1 at 15–17; 58 at 5.] The Court agrees.

"To establish a conspiracy under [42 U.S.C.] § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in [the] deprivation of a constitutional right." *Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010) (alterations in original) (internal quotation marks omitted). The plaintiff "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). The "evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

To establish a violation of 42 U.S.C. § 1985(3) based on a conspiracy to violate civil rights, a plaintiff must show:

> (1) a conspiracy of two or more persons, (2) who are motivated by a special class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (internal quotation marks omitted).

The Court has already concluded that Plaintiff has not forecasted evidence that could establish a deprivation of his constitutional rights. Additionally, Plaintiff has not forecasted any evidence of any conspiracy, conspiratorial objective, or discriminatory animus. As noted, Defendant simply obtained Roubaud's statement, gave it to the Solicitor, and then presented the statement to the Laurens County Grand Jury. [Doc. 49-2 ¶ 6.] Accordingly, the Court recommends that Defendant's summary judgment motion be granted as to the conspiracy claim under sections 1983 and 1985.

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment [Doc. 49] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

April 19, 2022
Greenville, South Carolina